IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHNNY K.,[1]

        Plaintiff,

                                    6:17-cv-01087-JR

                                    **OPINION AND ORDER**

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

RUSSO, Magistrate Judge:

        Plaintiff Johnny K. seeks judicial review of the Social Security Commissioner's final decision denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the Administrative

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Page 1 - OPINION AND ORDER

Law Judge (ALJ) erred in (1) failing to explain why he did not consider plaintiff's borderline age situation when plaintiff turned 55 years old less than three months after the decision; (2) rejecting plaintiff's testimony without providing clear and convincing reasons for doing so; and (3) failing to develop the record fully and fairly. I reverse the Commissioner's decision finding plaintiff not disabled, and remand for (1) an immediate award of benefits starting January 4, 2017; and (2) further proceedings on an open record to determine whether plaintiff was disabled before January 4, 2017.

## PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income in December 2013, alleging disability beginning in June 2010. Tr. 22. His applications were denied initially and on reconsideration.

In September 2016, plaintiff received a hearing before an ALJ. Tr. 44-100. In January 2017, the ALJ issued his decision finding plaintiff not disabled. Tr. 22-32. In May 2017, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## THE ALJ'S DECISION

To establish disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the familiar five-step sequential process to determine whether a claimant has established disability. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In the first four steps of the process, the claimant has the burden of proof,

Page 2 - OPINION AND ORDER

and at the fifth step the burden shifts to the Commissioner. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step of the sequential process, the ALJ found that plaintiff had not engaged in substantial gainful employment since June 10, 2010, the date of alleged onset of disability. Tr. 24. Plaintiff met the insured status requirements through December 31, 2011.

At the second step, the ALJ considered the severity of plaintiff's physical and mental impairments. See Yuckert, 482 U.S. at 140-41. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for twelve months or longer. See id., 482 U.S. at 141. Here, the ALJ found that plaintiff had the severe impairments of degenerative joint disease of the cervical and lumbar spines; right shoulder AC joint and sternoclavicular arthritis; partial right rotator cuff tear with bicep tendinitis; right elbow arthritis; and headaches. Tr. 24. The ALJ also found that the medical evidence showed "a possible cognitive disorder with reported subjective impairment and decline in cognitive function, a mild depressive disorder due to another medical condition with depressive features, and somatic disorder with predominant pain." Tr. 25. The ALJ found, however, that "these mental disorders do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Tr. 25.

At the third step, the ALJ determined plaintiff's impairments did not meet or equal any listed impairments that would preclude substantial gainful activity. Tr. 26-27. The ALJ then assessed plaintiff's residual functional capacity (RFC). The RFC is the Commissioner's estimate of a claimant's ability to perform sustained, work-related physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See*

Page 3 - OPINION AND ORDER

20 C.F.R. § 404.1545(a). The ALJ found that plaintiff had the RFC to perform light work, with the additional limitations that he could lift twenty pounds occasionally and ten pounds frequently; could sit, stand, and walk for six hours each during an eight-hour day; could frequently kneel, crouch, and crawl; could push or pull occasionally with his right upper arm because of mild elbow spurring; must avoid concentrated exposure to vibrations; and could perform only unskilled work tasks because of his progressive memory loss. Tr. 27. The ALJ further found that beginning December 17, 2013, plaintiff "required an option to sit 15 minutes after standing 15 minutes," and therefore needed "a sit/stand option with maximum standing or walking in 15 minute increments." Tr. 27.

At the fourth step, the ALJ, with the assistance of a vocational expert who testified at the hearing, considered whether a hypothetical person with plaintiff's RFC could perform plaintiff's past relevant work. See Yuckert, 482 U.S. at 141. Plaintiff's past relevant work included a facilities maintenance engineer, which is classified as a semi-skilled, medium-level job, although plaintiff performed it as a heavy-level job; aircraft prep painter, which is classified as a semi-skilled, light-level job, although plaintiff performed it as a medium-level job; or equipment-ammunition laborer, an unskilled medium-level job. Tr. 31. The vocational expert testified that a person with plaintiff's RFC could not perform his past relevant work.

At the fifth step, the ALJ determined whether plaintiff, despite his impairments, could perform any jobs that exist in significant numbers in the national economy. See Yuckert, 482 U.S. at 142. After considering the vocational expert's testimony on available occupations for a person with plaintiff's RFC, the ALJ found that plaintiff could work as a mail sorter; a storage

facility rental clerk[2]; and price marker, which are all light, unskilled jobs. The ALJ therefore found plaintiff not disabled through January 4, 2017, the date of the decision.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if the decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Batson v. Comm'r., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. If the evidence is susceptible of more than one rational interpretation, the court must uphold Commissioner's conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

**I. The ALJ's Failure to Adequately Consider Plaintiff's Borderline Age Situation**

Plaintiff has shown that he suffers from severe impairments that prevent him from doing his past relevant work, so the Commissioner must show that plaintiff can perform some other work that exists in substantial numbers in the national economy, considering plaintiff's RFC, age, education, and work experience. Lockwood v. Comm'r, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner can meet her burden either by using a vocational expert's testimony, or by applying the Medical-Vocational Guidelines.[3] Id. The Medical-Vocational Guidelines use

---

[2] So identified at the hearing by the vocational expert. Tr. 94. The ALJ's decision described the job as "source rental clerk." Tr. 32.

[3] The Medical-Vocational Guidelines are "commonly referred to as the grids." Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

Page 5 - OPINION AND ORDER

three age categories for evaluating claimants: younger person, for claimants under age 50; person closely approaching advanced age, for claimants between 50-54; and person of advanced age, for claimants 55 or older. Id. (citing 20 C.F.R. § 404.1563(c)-(e)).

Here, the ALJ issued his decision less than three months before plaintiff's 55th birthday. See Little v. Berryhill, 690 F. App'x 915, 917 (9th Cir. 2017) ("A claimant's age should be considered at the time of the ALJ's decision."). Plaintiff argues that the ALJ erred in determining his ability to work based on chronological age because the borderline age regulation, 20 C.F.R. § 404.1563(b), required that the ALJ evaluate him in the next higher age category as a person of advanced age. Plaintiff contends that if he is treated as a person of advanced age and considering the RFC found by the ALJ, he would be disabled under the Medical-Vocational Guidelines.

> The regulation defining borderline age provides,
>
> When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. <u>We will not apply the age categories mechanically in a borderline situation.</u> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b) (emphasis added).

Here, plaintiff satisfies the first part of the borderline age regulation because he was within three months of reaching an older age category when the ALJ issued his decision. See Trevino v. Berryhill, No. 7:16-cv-684, 2018 WL 1629211, at *8 (S.D. Tex. Mar. 3, 2018) (finding plaintiff who was four months from turning 55 to be in a borderline age situation, and

Page 6 - OPINION AND ORDER

noting decisions holding that claimants six months from reaching a higher age category were in borderline age situations), adopted, 2018 WL 1626365 (S.D. Tex. April 4, 2018); Adkins v. Colvin, 672 F. App'x 739, 740 (9th Cir. 2017) (holding that "the ALJ did not abuse his discretion in finding that Adkins reached advanced- age on November 1, 2010, even though he did not turn 55 until approximately six months later").

When a claimant is within a few months of reaching an older age category, the ALJ should evaluate the claimant under the next higher age category if the higher age category would result in the claimant being found disabled. 20 C.F.R. § 404.1563(b). To assist ALJs in applying the borderline age regulation, the Commissioner has issued instructions in the Program Operations Manual System (POMS), and in the Hearings, Appeals and Litigation Law Manual (HALLEX). The borderline age guidelines in the versions of POMS and HALLEX that were in effect when the ALJ issued the decision here[4] in January 2017 instruct ALJs to explain why they decided to use the claimant's chronological age or the next higher age category. See Pl.'s Opening Br., Ex. 1 (POMS provisions on borderline age); Ex. 2 (HALLEX provisions on borderline age). POMS instructs ALJs to "document how you considered borderline age," whether or not the claim was granted, by explaining "your decision to use the next higher age category or your decision to use the claimant's chronological age, including the case-specific supporting factors." POMS DI 25015.006, quoted in Pl.'s Opening Br., Ex. 1, at 14. Similarly, HALLEX instructs ALJs to "explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and

---

[4] HALLEX's provision on borderline age has not been updated since 2016. Pl.'s Opening Br. 9 n.9. POMS's provision on borderline age was updated in July 2017, after the ALJ's decision, but the update did not alter the substance of the provision. Pl.'s Opening Br. 9 n.8.

Page 7 - OPINION AND ORDER

note the specific factor(s) he or she considered." HALLEX I-2-2-42.C.5, quoted in Pl.'s Opening Br., Ex. 2, at 3.

Here, as noted above, the ALJ used plaintiff's chronological age in determining disability. Tr. 31. The ALJ's decision mentioned plaintiff's birth date, and noted that plaintiff was 48 years old as of his alleged disability onset date. Tr. 31. Although the ALJ's decision cited, without discussion, 20 C.F.R. § 404.1563, the ALJ did not mention the borderline age issue.

Relying on the Ninth Circuit's decision in Lockwood, the Commissioner contends that the ALJ was not required to consider the borderline age issue There, the plaintiff, who turned 55 about a month after the ALJ's decision finding her not disabled, argued that "the ALJ committed reversible error by failing to explain in her decision why she used Lockwood's chronological age." Id. at 1070. The Ninth Circuit affirmed, holding that "an ALJ is not *required* to use an older age category, even if the claimant is a few days or a few months of reaching an older age category." 616 F.3d at 1071. The Ninth Circuit concluded that the ALJ had shown she considered the older age category by mentioning Lockwood's date of birth in the decision: "Clearly, the ALJ was aware that Lockwood was just shy of her 55th birthday, at which point she would become a person of advanced age." Id. at 1072. The Ninth Circuit noted that the ALJ cited the borderline age regulation (apparently without any discussion), and relied on a vocational expert's testimony. Id.

The Ninth Circuit then rejected Lockwood's argument that the ALJ should have followed the instructions in the then-current versions of HALLEX and POMS. The court first held that HALLEX did not "impose judicially enforceable duties on either the ALJ or this court." Id. The court found that Lockwood had failed to "identify any additional vocational adversities that

would have given the ALJ reason to treat Lockwood as a person of advanced age." Id. As to POMS, the court stated that the version of POMS in effect at the time of the ALJ's decision "did not require the ALJ to provide an express explanation of the borderline age issue." Id. at 1073 (footnote omitted). The court also rejected Lockwood's reliance on a later version of POMS, which required ALJs to identify specific factors that would support using the claimant's chronological age. The court ruled that because HALLEX did not include such a requirement, HALLEX and POMS were inconsistent and therefore not entitled to substantial weight. Id. at 1073 & n.6. Finally, the court concluded that "the POMS guidance is not a persuasive interpretation of the regulation" because the regulation required "only that the ALJ consider whether to use the older age category; and it does not impose any obligation to make express findings incorporated in the ALJ's opinion." Id. at 1073.

However, since Lockwood was decided, the Commissioner has revised both POMS and HALLEX so that they are now consistent with one another,[5] negating one of the Lockwood court's reasons for discounting the persuasiveness of POMS and HALLEX. See Trevino, 2018 WL 1629211, at *13 n.13 ("the amended HALLEX provisions now in effect require ALJs to 'explain in the decision that he or she considered the borderline age situation,' and 'note the specific factor(s) he or she considered'") (quoting HALLEX 1-2-2-42.C.5). As plaintiff notes, in Social Security Ruling (SSR) 13-2p, which went into effect in 2013, after Lockwood was decided, the Commissioner stated, "We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual

---

[5] As plaintiff notes, HALLEX now cross-references POMS, instructing ALJs to consider POMS's examples of borderline age situations. Pl.'s Opening Br. 11.

Page 9 - OPINION AND ORDER

System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX)." (Emphasis added.) The Commissioner concluded, "All adjudicators must follow our instructions." Id.

Even though POMS and HALLEX are not binding on this court, I find that they are persuasive here because they are the Commissioner's current interpretation of the borderline age regulation. See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385-86 (2003) (addressing POMS provisions and ruling that "[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect") (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-140 (1944)); Clark v. Astrue, 529 F.3d 1211, 1216 (9th Cir. 2008) (although HALLEX is "strictly an internal Agency manual, with no binding legal effect on the Administration or this court," "as an Agency manual, HALLEX is 'entitled to respect' under Skidmore to the extent that it has the 'power to persuade'") (citations omitted)). POMS and HALLEX instruct ALJs to explain why they used a claimant's chronological age in borderline age situations. As one court has noted, "[t]he requirement of an explanation isn't conjured out of the ether. The regulation [20 C.F.R. § 404.1563(b)] specifically says that ALJs 'will consider' whether to give a claimant the benefit of the doubt in borderline cases." McKay v. Colvin, No. 15 c 9522, 2016 WL 6432582, at *5 (N.D. Ill. Oct. 31, 2016). Requiring ALJs to explain how they applied the borderline age regulation also promotes judicial review of the Commissioner's decisions. See Young v. Colvin, No. CV 15-7874, 2016 WL 3124652, at *5 (C.D. Cal. May 31, 2016) (noting that the Ninth Circuit "recently emphasized its dislike of such formulaic decision-writing") (citing Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014); Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015)).

I conclude that the ALJ erred in failing to explain why he used plaintiff's chronological age rather than the next higher age category. I also find that the ALJ's error is not harmless. Cf. Carmickle v. Comm'r, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ's error is harmless if "inconsequential to the ultimate nondisability determination"). Unlike the plaintiff in Lockwood, plaintiff here has identified additional vocational adversities, based on the ALJ's own findings, that would justify applying the higher age category and result in a finding of disability under the Medical-Vocational Guidelines. The ALJ found that plaintiff could perform light work, but with additional limitations that "seriously affect[ed]" plaintiff's "ability to adjust to other work." HALLEX I-2-2-42.C.2. The additional limitations included the need to sit or stand every fifteen minutes, and memory deficits that limit plaintiff to unskilled work. Tr. 30. A district court explained the importance of additional impairments in the borderline age analysis:

> The [POMS] section covering borderline age cases, DI.25015.006, suggests that additional impairments are those that do not reduce an RFC from one level to another – say, from light work to sedentary work – but do reduce the vocational base within that RFC. The section gives the example of an individual of borderline age with a light RFC who has an additional impairment that precludes overhead reaching. This would not erode the base enough to drop the individual to a sedentary RFC, but it would be enough to support placing the individual in the higher age category. If the individual had an additional impairment that did significantly erode the light work vocational base – the section cites a 4-hour limitation on standing/walking as an example – that would reduce the RFC category to sedentary and, as the additional impairment was already accounted for, it would be inappropriate to account for it again by also placing the individual in the next highest age category.

McKay v. Colvin, No. 15 c 9522, 2016 WL 6432582, at *6 (N.D. Ill. Oct. 31, 2016) (citations omitted). Here, the ALJ found limitations that were not significant enough to reduce plaintiff's RFC from light to sedentary work, but did reduce the range of jobs plaintiff could perform. Therefore, under the borderline age regulation, the ALJ erred in failing to place plaintiff in the

Page 11 - OPINION AND ORDER

next higher age category, advanced age, because the Medical-Vocational Guidelines for a person of advanced age with the limitations found by the ALJ would direct a finding of disability. See 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 202.06 (a claimant of advanced age, limited to light work, and lacking either education providing direct entry into skilled work or transferable skills, is disabled).

## II. The ALJ's Credibility Determination on Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his statements about the severity of his impairments. To find "a claimant's pain or symptom testimony not credible," an ALJ "must make two findings." Treichler, 775 F.3d at 1102. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (citation and quotation marks omitted). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ must "specifically identify" the claimant's testimony that he or she finds to be not credible and explain which evidence undermines the testimony. Id. (citing Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)). This requirement means that "'[g]eneral findings are insufficient.'" Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir.1995)). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." Id. "Factors that an ALJ may consider in weighing a

Page 12 - OPINION AND ORDER

claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citations omitted).

Here, because the ALJ found that plaintiff presented objective medical evidence of his underlying impairments, and because the ALJ did not find evidence of malingering, the ALJ was required to identify the specific portions of plaintiff's testimony he found not credible, and explain why he found them not credible. The ALJ found that plaintiff's allegations were not fully credible because they were inconsistent with the objective medical findings, because of plaintiff's conservative medical treatment, and based on plaintiff's daily activities. Def.'s Br. 3. I conclude that the ALJ failed to identify specifically the reasons for discrediting plaintiff's testimony and allegations.

The ALJ found that plaintiff's allegations "are not consistent with the medical record. Despite the claimant's cervical and lumbar degenerative disc disease and shoulder joint arthritis, his range of motion was only mildly limited." Tr. 30. However, as courts within this district have held, even "'mild degenerative disc disease can have disabling effects.'" Catherine L.E. v. Comm'r, No. 3:17-cv-01585-JR, 2018 WL 4931992, at *6 (D. Or. Oct. 11, 2018) (quoting Dahl v. Comm'r, No. 3:14-cv-00904-CL, 2015 WL 5772060, at *5 (D. Or. Sept. 30, 2015)). "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." Treichler, 775 F.3d at 1103 (citation and quotation marks omitted).

I conclude that the ALJ's credibility finding based on the objective medical evidence is too general to support discrediting plaintiff's pain testimony. If the ALJ fails to specify the evidence supporting his or her reasons for discrediting the claimant's testimony, it is not this court's role to search the record and make independent findings. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015).

The ALJ also found that plaintiff's treatment "has been very conservative, largely over-the-counter and prescription medication." Tr. 30. The ALJ stated, "Generally, he has not received the type of medical treatment one would expect for a totally disabled individual." Tr. 30. However, plaintiff has undergone surgeries including a right wrist fusion in about 2000, Tr. 375; a cervical fusion at C6-7, also in about 2000, Tr. 349, 363; and back surgery in 2014 for decompression at L4-L5, Tr. 541. Given this medical history, the Commissioner does not attempt to defend this ground for discrediting plaintiff's testimony.

The ALJ also found that plaintiff's testimony about his limitations was not consistent with his stated daily activities. Tr. 30. A claimant's reported daily activities may support an adverse credibility determination if the activities would be "transferable to a work setting," or if the activities contradict the claimant's other testimony. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). A claimant "does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, the ALJ found that plaintiff "reported he could perform adequate self-care, prepare full meals, do household chores, perform some yard work, and go out to the store. Tr. 30. The record also indicated that the claimant engaged in activities such as "working on motors, camping, fishing, hiking, walking outdoors, performing odd jobs, picking mushrooms, and using

a chainsaw to cut firewood." Id. (citations to record omitted). The ALJ concluded that plaintiff's reported activities "indicate a higher level of function than that alleged by the claimant." Tr. 30.

I find that the reports of daily activities cited by the ALJ lack the specificity required to discredit plaintiff's testimony about his symptoms. For example, the ALJ cited reports of plaintiff's office visits to the Clinic of the Cascades, which, under the heading "Social History," contain identical lists under "Hobbies/Recreation," stating that plaintiff "enjoys: camping, fishing, hiking, and outdoors. Exercise: outdoors walking, firewood 'all the time.'" Tr. 352 (report of visit on August 15, 2015); Tr. 354 (report of visit on December 18, 2013); and Tr. 357 (report of visit on January 8, 2014). The reports fail to indicate when plaintiff participated in these activities, how frequently he did so, or if he was merely describing activities he hoped to someday resume. There are references in the record to plaintiff "travel[ing] around completing odd jobs, including picking mushrooms, in order to pay child support." Tr. 393 (March 26, 2014, report of Robyn K. Spencer, speech language pathologist). But there is no context or detail to show how much exertion mushroom picking or the other "odd jobs" required of plaintiff. Similarly, there are references to plaintiff's enjoyment from repairing engines and other mechanical devices, but without context these references shed no light on plaintiff's ability to work. I conclude that the ALJ's credibility findings are not supported by substantial evidence in the record.

**III. Remand for Further Proceedings**

Plaintiff contends that this case should be remanded for an immediate award of benefits rather than further proceedings. When a court finds that the ALJ committed harmful error, the Social Security Act allows the court to modify or reverse the Commissioner's decision "'with or

Page 15 - OPINION AND ORDER

without remanding the case for a rehearing.'" Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g) (emphasis deleted). The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." Id. at 1020. The court should determine first whether the "'ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Treichler, 775 F.3d at 1100-01 (quoting Garrison, 759 F.3d at 1020). Second, if the ALJ has erred, the court should determine whether the record has been fully developed, whether outstanding issues must be resolved before determining disability, and whether further administrative hearings would be useful. Id. at 1101. Third, if the court concludes "that no outstanding issues remain and further proceedings would not be useful," the court may "find the relevant testimony credible as a matter of law" and "determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." Id. (citations, quotation marks, and brackets omitted). The court retains discretion to remand for further proceedings if the record as a whole creates "serious doubt as to whether the claimant is, in fact, disabled." Garrison, 759 F.3d at 1021.

     First, as to the borderline age issue, I conclude that remand for an immediate award of benefits is appropriate. The ALJ erred in failing to explain why plaintiff was not treated as being of advanced age, and the record on this issue has been fully developed because the ALJ's findings on plaintiff's RFC dictate a finding of disability under the Medical-Vocational Guidelines, as discussed above. Because I accept the ALJ's findings on plaintiff's RFC for purposes of the borderline age issue, I need not determine whether plaintiff's testimony should be credited as true. Plaintiff is therefore entitled to an award of benefits from January 4, 2017.

Second, as to whether plaintiff was disabled before January 4, 2017, I conclude that remand is necessary for further proceedings on an open record. Most importantly, the record does not appear to include any treating or examining physician's evaluation of plaintiff's ability to work. Plaintiff points out this deficiency in his argument that the ALJ failed to develop the record. Pl.'s Opening Br. 20-21. Plaintiff notes that there are no "medical source statements from [plaintiff's] doctors about the impact of his impairments on 'what [he] can and can't do.'" Pl.'s Opening Br. 20 (quoting Tr. 86). The only medical opinions on plaintiff's ability to work are from non-examining evaluators. See, e.g., Tr. 103-13; 127-43. The record should be more fully developed to obtain medical opinions and other evidence on plaintiff's physical and mental impairments and their impact on his RFC from 2010 until January 4, 2017.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED (1) for immediate payment of benefits starting January 4, 2017; and (2) for further administrative proceedings on an open record under sentence four of 42 U.S.C. § 405(g) to determine whether plaintiff was disabled before January 4, 2017.

IT IS SO ORDERED.

Dated this 4th day of February, 2019.

/s/ Jolie A. Russo

Jolie A. Russo
U.S. MAGISTRATE JUDGE